***********
In accordance with the directions from the Court of Appeals and in light of the Opinion and Award filed by Deputy Commissioner Garner, the Full Commission hereby modifies its prior Opinion and Award in this action as follows based on the competent evidence in the record.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. Plaintiff's date of injury is 18 December 1995.
3. On that date, the employer-employee relationship existed between the parties.
4. Continental Casualty Company is the compensation carrier on the risk.
5. Plaintiff's average weekly wage is $344.00.
6. At the time of the hearing before the deputy commissioner, plaintiff was working in a part-time position for defendant-employer and was receiving temporary partial compensation benefits.
 *********** EVIENTIARY RULING
Defendants' motion to strike the testimony of plaintiff's treating physicians on the ground that plaintiff's counsel had ex parte
communications with those physicians, is OVERRULED.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the initial hearing before the deputy commissioner, plaintiff was a thirty-eight year old female with a tenth grade education. Plaintiff obtained a GED in 1978. Plaintiff had worked in food preparation and as a waitress.
2. Plaintiff began working as a cashier for defendant-employer in May 1995, but then was assigned to the salad bar. In December 1995, plaintiff was working as a cashier due to the busy holiday season. As a cashier, plaintiff's job duties included lifting and scanning grocery items.
3. Before plaintiff began working for defendant-employer, plaintiff's medical history included back problems and some hearing loss in both ears. Plaintiff had also suffered third degree burns on the bottom of her feet when she was a child. Plaintiff's feet were bothered by prolonged standing.
4. On 18 December 1995, while working as a cashier, plaintiff felt a pain in her lower back when she lifted a bag of cat litter from the bottom of a shopping cart to the scanner. This injury was accepted as compensable by defendants pursuant to a Form 60 Employer's Admission of Employee's Right to Compensation filed 14 February 1996.
5. Plaintiff sought treatment from Urgent Care on 26 December 1995 for low back pain. At this time, plaintiff did not mention any neck and upper back pain. Plaintiff was given a prescription for pain medication and referred to her family physician, Warren A. Blackburn, M.D.
6. Plaintiff first saw Dr. Blackburn for her compensable low back injury on 27 December 1995. Plaintiff reported pain in her lower back, radiating down her legs. Dr. Blackburn gave plaintiff some pain medication and referred her to orthopaedics. Thereafter, plaintiff consulted Dr. Blackburn on four occasions for various medical problems: 7 June 1996, 25 September 1996, 8 October 1996, and 24 October 1996. Plaintiff did not mention any neck or upper back problems to Dr. Blackburn at any of these visits.
7. Plaintiff came under the care of physicians at Triangle Spine and Back Care. At her first visit there on 10 January 1996, plaintiff completed a patient history form. Plaintiff indicated on the form that she was having back and leg pain, but did not mark any pain in the neck or arm areas. Plaintiff was initially treated by Michael D. Gwinn, M.D. Dr. Gwinn referred plaintiff to another doctor in his office, James S. Fulghum, III, M.D. An MRI showed a moderate central herniated disc at L4-5. Dr. Fulghum performed surgery on 24 January 1996, during which he removed two large disc fragments from plaintiff's back.
8. Plaintiff initially improved post-surgery. Dr. Fulghum sent plaintiff to an exercise facility called Back Builder, for physical therapy. After completing about three out of five weeks of rehabilitation sessions, plaintiff complained of increased back and bilateral leg pain and massive swelling of the right knee. Plaintiff also reported diffuse low back and neck pain at this visit on 12 April 1996. There were no radicular symptoms associated with the neck complaints. Dr. Fulghum performed a myelogram CT Scan which revealed no new major lesions at the site of plaintiff's surgery, and therefore, referred her to Claudia J. Svara, M.D., a rheumatologist. However, plaintiff did not keep her appointment with Dr. Svara. When Dr. Fulghum last saw plaintiff in April 1996, she was not at maximum medical improvement and was not capable of working an eight-hour day.
9. On 9 May 1996, plaintiff began treatment with T. Craig Derian, M.D., an orthopaedic surgeon, for her ongoing complaints of lower back pain. After examining plaintiff and the results of her post-surgical lumbar myelogram and CT Scan, Dr. Derian diagnosed plaintiff with a recurrent herniated disc at L4-5. On 30 July 1996, Dr. Derian performed a decompression at plaintiff's L4-5.
10. By 16 December 1996, plaintiff's condition had stabilized following her second surgery. Dr. Derian rated her with a twenty percent permanent impairment of her back. Dr. Derian released plaintiff for light duty sedentary work with the following restrictions: no lifting greater than ten pounds, no repetitive or prolonged bending, lifting, or stooping, and frequent position changes from sitting and standing to walking.
11. Dr. Derian approved a part-time "greeter" position for plaintiff. He released plaintiff from his care on 27 January 1997. At the time of his deposition, Dr. Derian opined that plaintiff was capable of performing part-time work which incorporated his initial work restrictions.
12. During her treatment with Dr. Fulghum and Dr. Derian, the focus of plaintiff's complaints was her lower back. Until her 27 January 1997 visit, Dr. Derian's notes reflect no complaints of neck pain during his treatment of plaintiff.
13. On 14 February 1997, plaintiff called her family physician, Dr. Blackburn, and reported a burning sensation in her upper back. Dr. Blackburn prescribed muscle relaxants to relieve plaintiff's symptoms. Prior to February 1997, plaintiff did not report any concerns of upper back and neck pain to Dr. Blackburn.
14. On 1 May 1997, plaintiff saw Robert Esposito, M.D., an orthopaedic surgeon with complaints of pain in her neck. Plaintiff reported that she had developed pain "over the past couple of months" in her upper back. In a July follow-up visit, Dr. Esposito ordered an MRI, which revealed a herniated disc at C5-6. Dr. Esposito then referred plaintiff to Duke University Medical Center for further treatment.
15. Plaintiff was first examined by a neurosurgeon, Michael M. Haglund, M.D., at Duke University Medical Center on 6 October 1997. Plaintiff reported a history of neck pain that was continuous from the date of her compensable injury by accident of 18 December 1995. Dr. Haglund performed an anterior cervical discectomy and fusion on 12 October 1997. Dr. Haglund opined that plaintiff's herniated cervical disc was caused or aggravated by her 18 December 1995 accident. However, Dr. Haglund was unaware of the absence of documented complaints of cervical pain during plaintiff's treatments with Dr. Derian or Dr. Fulghum. Instead, Dr. Haglund relied on the history provided by plaintiff, which is not accepted as credible because plaintiff's testimony regarding the history of her neck pain was inconsistent and unsupported by medical documentation. Accordingly, the Full Commission is not persuaded by Dr. Haglund's opinion regarding the causation of plaintiff's herniated cervical disc.
16. Prior to her accident of 18 December 1995, plaintiff had degenerative disc disease. The specific traumatic incident plaintiff sustained on 18 December 1995 significantly aggravated her pre-existing back condition, resulting in a herniated disc at L4-5 and low back pain. The surgeries performed by Dr. Fulghum and by Dr. Derian were reasonably necessary to treat her herniated disc at L4-5 and provide relief from her pain.
17. The evidence fails to establish that plaintiff's herniated cervical disc was caused by her compensable accident of 18 December 1995. Therefore, defendants are not responsible for the treatment rendered by Dr. Haglund, including the neck surgery.
18. When plaintiff was out of work for her cervical surgery in December 1997, she received $400 in disability benefits under a plan funded by defendant-employer.
19. As a result of her compensable injury and subsequent back surgeries, plaintiff has a condition known as failed low back syndrome. The surgeries have not been totally effective in relieving her pain. Plaintiff continues to suffer pain, which varies from day to day, such that she has good days and bad days. Plaintiff continues to take pain medicine, which causes drowsiness. Plaintiff's pain is the primary limiting factor in her ability to return to gainful employment.
20. Plaintiff will need ongoing treatment, including medication, to manage her pain. The physicians agree that the only other treatment option would be a fusion, which had not been recommended at the time of the initial Full Commission review. Plaintiff was not a surgical candidate at the time of the initial Full Commission review and did not need to be monitored by a surgeon. Dr. Blackburn, plaintiff's family physician, is an appropriate physician to manage her ongoing pain treatment. However, plaintiff may also benefit from a pain clinic and from further vocational training.
21. After she was released by Dr. Derian on 27 January 1997, plaintiff returned to work part-time for defendant-employer as a greeter. As greeter, plaintiff was stationed near the entrance of the store so that she could greet customers and hand out advertisements. The greeter position is an actual job that exists in some of defendant-employer's stores, but, before plaintiff was offered the position, a greeter was not used at the store where plaintiff worked.
22. The greeter position was modified to fit plaintiff's work restrictions. Plaintiff was given a chair, so that she had the option to sit or stand during her shift, and she was allowed frequent breaks. The position was scheduled for twenty hours per week, but, due to chronic back pain, plaintiff was unable to perform the job for the full twenty hours. The stipulated exhibit shows that on average, plaintiff worked only 14.84 hours per week. Some of the missed time from work may not have been due to her injury, but a substantial portion of the missed time was injury-related. Plaintiff's irregular attendance would not be tolerated by most employers. Under the totality of the circumstances, the greeter position performed by plaintiff was not indicative of plaintiff's ability to compete with others for wages.
23. Plaintiff has been evaluated by two vocational specialists. Stephen Carpenter, a vocational rehabilitation counselor, performed an evaluation at plaintiff's counsel's request. Plaintiff demonstrated good spelling and reading skills, but she had poor math skills and poor finger dexterity. This may have been due, in part, to her pain medication. Mr. Carpenter concluded that unless plaintiff's pain situation improved, she would not be able to return to competitive full time employment.
24. David Arthur, a counselor with the North Carolina Division of Vocational Rehabilitation Services, first met with plaintiff in January 1997 to perform a vocational assessment. Mr. Arthur rated plaintiff as category two, with severe disabilities for purposes of vocational rehabilitation. Mr. Arthur attempted to work with plaintiff in a vocational program offering clerical training, but plaintiff was unable to complete the program due to her pain. Mr. Arthur assessed pain as plaintiff's primary limiting factor. Although Mr. Arthur believed that plaintiff's pain would limit her employment options, he opined that plaintiff might be capable of finding work after additional training in the clerical field.
25. Because of her back pain, plaintiff is not capable of working a full-time job. Although there are part-time jobs available for unskilled workers such as plaintiff, she is unable to compete for such positions.
26. Defendant-employer has other part-time positions available within plaintiff's restrictions, including a pharmacy technician and a video clerk. Both of these positions are available for twenty hours per week. There is insufficient evidence at this time that plaintiff is capable of performing those positions on a consistent basis because of her low back pain.
27. Plaintiff and her counsel have a fee agreement allowing for a 33-1/3% attorney's fee, subject to approval of the Commission. However, the factual and legal issues involved in this case were not of such complexity as to justify departing from the Industrial Commission's usual and customary award of a 25% attorney's fee. Unlike a personal injury case, plaintiffs in workers' compensation cases are not entitled to "pain and suffering" damages, but are generally limited to wage replacement and a permanent partial rating. Thus, the Commission finds, in its discretion, that a 33-1/3% fee award would be unreasonable and that an attorney's fee of 25% is reasonable and should be approved. Because the Full Commission is the ultimate judge of the facts, it is expected from the onset when an attorney accepts a client in a workers' compensation claim that the case could proceed to the Full Commission. Further, an appeal to the Court of Appeals does not necessarily support an increase in attorney's fees to be deducted from plaintiff's recovery. In determining a fee in accordance with Section 97-90, the Commission is entitled to consider several factors including the customary fee for similar services. The Full Commission finds that customary fee for representation of a workers' compensation claimant before the Commission and through the appellate courts is 25% of plaintiff's recovery of indemnity benefits. To award further benefits, under the circumstances of this case would unreasonably reduce the recovery of the injured plaintiff whose interest the Commission is required to protect.
28. Deputy Commissioner Garner entered an Opinion and Award on March 25, 2002. Within fifteen days, on or about April 4, 2002, plaintiff filed a motion for reconsideration with Deputy Commissioner Garner. On June 18, 2002, Deputy Commissioner Garner entered an order denying plaintiff's motion for reconsideration. On June 18, 2002, Commissioner Riggsbee sent a letter to counsel requesting clarification of the issues that need to be addressed by the Full Commission in light of the Court of Appeals' Decision and the Opinion and Award entered by Deputy Commissioner Garner. On June 28, 2002, plaintiff responded explaining that plaintiff had filed a motion for reconsideration which was denied by Deputy Commissioner Garner and that the motion for reconsideration contained a conditional notice of appeal in the event that the motion was denied. Plaintiff further requested that the Full Commission docket plaintiff's appeal from Deputy Commissioner Garner's Opinion and Award. The Full Commission takes judicial notice that June 28, 2002, is within fifteen (15) days of Deputy Commissioner Garner's Order denying the motion for reconsideration. Therefore, the June 28, 2002 letter from plaintiff's counsel constitutes a timely notice of appeal to the Full Commission from the Opinion and Award of Deputy Commissioner Garner.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 18 December 1995, plaintiff sustained an injury by accident, or specific traumatic incident to her low back and L4-5 disc, arising out of and in the course of her employment with defendant-employer. G.S. §97-2(6).
2. Plaintiff's neck problems and herniated cervical disc were not caused by her compensable injury by accident of 18 December 1995. G.S. § 97-2(6).
3. As a result of her injury by accident to her low back, plaintiff has received reasonably necessary medical treatment, including the surgeries performed by Dr. Fulghum and Dr. Derian. Defendants are responsible for payment for all reasonably necessary medical treatment for plaintiff's low back condition which has been rendered, or which may in the future be required to effect a cure, give relief, and tend to lessen her disability, subject to the limitations of G.S. § 97-25.1. G.S. § 97-2(19).
4. Plaintiff has sustained a 20% permanent partial disability to her back, but may not recover under § 97-31 if she elects benefits under § 97-29. G.S. § 97-31.
5. As a result of her injury by accident, plaintiff has been unable to earn wages in the same or other suitable employment since she was released by Dr. Derian in January 1997. Although plaintiff has earned some wages in the greeter position for defendant-employer, this position does not indicate that plaintiff is able to compete with others for wages. Peoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798 (1986).
6. Plaintiff is entitled to total disability benefits at the rate of $229.34 per week beginning 27 January 1997 and continuing until further order of the Commission; however, defendants are entitled to an offset for wages paid to plaintiff while she was employed in the greeter position. G.S. § 97-29.
7. Defendants are not entitled to a credit for the $400.00 paid to plaintiff under the disability plan funded by defendants, because these benefits were paid for disability due to plaintiff's neck injury, which has been determined not to be compensable under the Act. G.S. § 97-42.
8. Pursuant to the Commission's responsibility of approving or disapproving all attorney's fees under the Act, a 25% attorney's fee award is approved for plaintiff's counsel. G.S. § 97-90.
9. The issue of whether plaintiff is permanently and totally disabled is currently before the Full Commission on remand from the Court of Appeals and on review by plaintiff's appeal from the Opinion and Award of Deputy Commissioner Garner. The March 25, 2002 Opinion and Award entered by Deputy Commissioner Garner has not become final because plaintiff timely and properly filed a motion for reconsideration. Although plaintiff cannot proceed with a motion for reconsideration and an appeal, and a conditional request for review is not recognized by the Commission, plaintiff gave timely notice for review of Deputy Garner's Opinion and Award in the June 28, 2002 letter to Commissioner Riggsbee asking the Full Commission to review Deputy Garner's Opinion and Award.See G.S. § 97-85; Industrial Commission Rule 701. This case, therefore, will be placed on the docket of the Full Commission on plaintiff's notice of appeal from Deputy Commissioner Garner's March 25, 2002 Opinion and Award and the Court of Appeals' remand on the issue of whether plaintiff is permanently and totally disabled, and the parties shall file their Form 44 and briefs in accordance with the Rules of the Industrial Commission.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all reasonably necessary medical expenses, incurred or to be incurred by plaintiff as a result of her admittedly compensable L4-5 back injury on 18 December 1995, subject to the limitations of G.S. § 97-25.1.
2. Defendants shall pay plaintiff total disability benefits at the rate of $229.34 per week beginning 27 January 1997 and continuing until further order of the Commission, subject to a credit to defendants for wages paid to plaintiff while she was employed in the greeter position, and subject to the attorney's fees approved below.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under this Award is approved for plaintiff's counsel and shall be paid as follows: 25% of the accrued amount due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth compensation check.
4. This case shall be placed on the docket of the Full Commission on plaintiff's notice of appeal from Deputy Commissioner Garner's March 25, 2002 Opinion and Award and the Court of Appeals' remand on the issue of whether plaintiff is permanently and totally disabled, and the parties shall file their Form 44 and briefs in accordance with the Rules of the Industrial Commission.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER